IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN-DUBUQUE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. CR 18-01027-CJW-MAR |
| | ) | |
| vs. | ) | |
| | ) | |
| JEREMY JOHN KIEFFER, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Sentencing in this matter has been set for March 6, 2019, at 9:30 a.m.

Pursuant to the Court's order setting the sentencing hearing (Docket 65), the

United States provides the following information:

### A.     Witnesses

Chad Leitzen

### B.     Exhibits

None

### C.     Issues

The first issue noted in the final draft presentence report is whether

defendant has a prior serious drug felony for purposes of the First Step Act.  For the

reasons discussed in the government's notice regarding the final presentence report

(Docket 63), the United States asserts defendant served a sentence of imprisonment

of more than one year, and therefore the presentence report correctly determined

1

the applicable statutory penalties in this case.[1]  The United States notes that, regardless of whether defendant is subject to a 15-year or 10-year mandatory minimum, the advisory guidelines in this case are well in excess of the mandatory minimum term of imprisonment.  Therefore, the mandatory minimum term of imprisonment[2] would only be material if the Court were to vary downward from the range, as requested by defendant.  As discussed below, a downward variance is not appropriate in this case.

The second issue impacting sentencing is defendant's motion for downward variance.  (Docket 69 at 5-7).  Defendant's proffered bases for a downward variance are the disparity in the advisory guidelines' treatment of pure methamphetamine and methamphetamine mixture, and his own history of methamphetamine addiction.  (*Id.*).

When deciding on a sentence that is "sufficient, but not greater than necessary," the Court is required to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

---

[1] The United States notes that, after the parties provided written responses regarding the applicability of the First Step Act, defendant has submitted additional documentation of his custody in the Oklahoma Department of Corrections.  The United States is continuing to investigate defendant's custody status, and will inform the Court if its position on this issue changes.

[2] The United States notes that, were the Court to find that defendant did not have a qualifying prior serious drug felony, defendant's mandatory minimum term of supervised release would be reduced from 10 years to 5 years.  The United States would still request a term of supervised release of 10 years in this case due to defendant's significant criminal history, and his immediate recidivism—indeed, escalating criminal conduct—following his service of a substantial prison sentence in Oklahoma for a methamphetamine offense.

(2) the need for the sentence imposed--
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to protect the public from future crimes of the defendant; and
    (C) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established [under the United States Sentencing Guidelines]
(5) any pertinent policy statement [by the Sentencing Commission]
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Here, a balancing of all of the pertinent § 3553(a) factors favors a sentence within the advisory guidelines range calculated in the final draft presentence report. First, defendant is properly being held responsible for the distribution of 22 kilograms of ice methamphetamine in a span of less than a year. In his objections to the presentence report, defendant attempts to reduce the quantity of ice methamphetamine that he had previously admitted to officers that he had obtained. The United States will call one of the interviewing officers to establish defendant's prior statement that he had obtained and distributed the quantities reflected in paragraphs 5 and 6. During that interview on March 7, 2018, defendant admitted that while 40 kilograms of methamphetamine was a little high for an estimate, conservatively, 20 kilos was about right. The United States submits that defendant's statements to the officer should be credited over his unexplained near-halving of that number. Nevertheless, either quantity would qualify as a base offense level 38.

Regardless of whether the Court finds defendant is responsible for distributing 13 or 22 kilograms of methamphetamine, he is responsible for distributing a massive quantity of highly pure methamphetamine, the use of which caused untold damage in the Dubuque community. This fact is a significant one, and supports a sentence within the advisory guidelines range. Defendant requests that this Court follow Chief Judge Strand's policy disagreement with the methamphetamine guidelines stated in *United States v. Harry*, 313 F.Supp.3d 969 (N.D. Iowa 2018). (Docket 69 at 6). This Court is not required to adopt Chief Judge Strand's policy disagreement with the methamphetamine guidelines, and should not do so. The drug base offense levels in USSG §2D1.1 are largely driven by drug quantity. Simply put, drug purity *is* drug quantity – the amount of active drug in the mixture or substance. There is a significant difference between the amount of active drug in a kilogram of 1% pure methamphetamine (10 grams) and the amount of active drug in a kilogram of 100% pure methamphetamine (1,000 grams). It is entirely rational for the advisory guidelines to treat these two quantities of active drug differently. The Court should reject the actual/mixture methamphetamine disparity as a grounds for variance.

Moreover, defendant's serious criminal history, warrant a conclusion that defendant is at a very high risk to recidivate. Defendant's criminal history includes what amounts to an armed robbery committed by defendant and his half-brother in 2000. (PSR 28). During that crime, defendant and his half-brother walked into a convenience store in Dubuque carrying pillow cases. His half-brother was holding a

4

shiny bladed butcher knife, which he pointed at the cashier while ordering that he put all the money and food stamps in his pillow case. Defendant then moved behind the cashier and repeatedly instructed him to put all the money in the pillow case. He sustained another felony methamphetamine conviction in 2015 and committed the instant offense while on parole in that case.

Finally, defendant's near-immediate recidivism in this case, and escalating criminal conduct warrant a sentence within the advisory guidelines range to reflect the seriousness of the offense, to promote respect for the law, and to protect the public from future crimes of defendant. Defendant cites his "long time addiction to methamphetamine which in turn resulted in his distribution of methamphetamine" as a basis for a downward variance. (Docket 69 at 7). This comment is rather divorced from defendant's conduct in this case. It is true that defendant reports long-term methamphetamine abuse. (PSR 70). He also reported a two-year sober period shortly before he began committing the instant offense. (PSR 79). Defendant's conduct in this case is not that of a drug user who "fell off the wagon" and started selling small quantities of methamphetamine to support his habit. Defendant parlayed his incarceration in Oklahoma into acquiring a source of large quantities of ice methamphetamine. (PSR 5). He re-sold that methamphetamine and personally earned more than $100,000 in gross proceeds from his ice methamphetamine sales. (PSR 7). Defendant's methamphetamine addiction is not a substantial mitigating factor when viewed in light of his substantial, profit-driven criminal conduct in this case.

5

In conclusion, a sentence within the advisory guidelines would result in a sentence that is sufficient, but not greater than necessary, to achieve the goals of sentencing.  Defendant's motion for downward variance should be denied.

## Advisory Guidelines Calculations

Base Offense Level                          38

Acceptance of Responsibility            -3

Total Offense Level                         35

Criminal History Category               IV

Advisory Guidelines Range              235 to 293 months' imprisonment

Respectfully submitted,

PETER E. DEEGAN, JR.
United States Attorney

By: */s/ Dan Chatham*

DAN CHATHAM
Assistant United States Attorney
111 7th Avenue SE, Box 1
Cedar Rapids, IA 52401-2101
(319) 363-6333
(319) 363-1990 - fax
Dan.Chatham@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2019, I electronically filed the foregoing with the Clerk of Court using the ECF system which will send notification of such filing to the parties or attorneys of record.

UNITED STATES ATTORNEY

BY: /s/  Dan Chatham